IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-CR-271 (RDA) |
| VALERIY KOUZNETSOV, | Sentencing: March 11, 2026 |
| *Defendant.* | |

### POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by and through undersigned counsel, hereby submits its position with respect to the sentencing of defendant Valeriy Kouznetsov.  In the Presentence Investigation Report ("PSR") prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 30 to 37 months imprisonment, based on a total offense level of 17 and a criminal history category of III.  Dkt. 43 ("PSR") ¶¶ 36, 55.  In accordance with the Plea Agreement entered into by the parties, the United States respectfully recommends the Court impose a sentence of 28 months in prison, followed by a three-year term of supervised release, which is sufficient but not greater than necessary to reflect the totality of the defendant's conduct and comport with the purposes of sentencing set forth in 18 U.S.C. § 3553.

### BACKGROUND

**I.  Factual Background**

As recounted in the Statement of Facts, signed by the defendant, and the PSR, between February 15, 2025, and May 15, 2025, the defendant made multiple threats toward the President of the United States, his family, and other government officials.  The defendant posted these

1

threats on X (formerly Twitter) and made them publicly viewable. Further, he sent multiple threats directly to the X accounts belonging to President Trump and other officials.

For example, on March 28, 2025, the defendant posted a publicly viewable message on X, threatening "bitch trump" with a "7/13 secret service repeat Philadelphia" – a reference to the July 13, 2024, attempted assassination of President Trump at a campaign rally in Butler, Pennsylvania. Then, on April 17, 2025, the defendant made an X post, tagging the President, in which he threatened, "you are a hopeless and helpless American bitch I will murder all of you filthy rats[.]" Two days later, he publicly posted "I murder all of you including chump[.]" In addition to these messages, the defendant publicly posted a slew of other threatening, hate-filled, messages directed to, and/or about, government agencies, officials, and other public figures. *See* Exhibit 1 (compilation of publicly-viewable X posts on the defendant's account).

As reflected in the PSR, the defendant has a history of making threatening statements. In July 2020, he approached the Trump International Hotel in Washington, D.C., climbed over the bike rack fencing, and attempted to enter the facility. When he encountered hotel staff, the defendant threatened to harm hotel employees and stab the President. For that offense, the defendant was arrested in D.C. and convicted of threatening to kill or injure the President, in violation of 18 U.S.C. § 871. He was sentenced to 27 months in prison and a 3-year term of supervised release. He was released from custody in July 2022.

On April 5, 2023, the defendant was arrested on a supervised release violation after he entered the area around the White House, in violation of the conditions of his supervised release. Subsequently his supervised release was revoked, and he was sentenced to 12 months and 1 day of incarceration, followed by a new term of supervision of 24 months.

In April 2025, the United States Secret Service became aware that the defendant was posting threatening messages on X (the basis of the instant conviction). The District of Columbia issued a Petition alleging violations of the defendant's supervised release and authorized an arrest warrant. The defendant was found in violation, his term of supervised release was revoked, and he was sentenced to 1 month and 29 days in prison.

II.     **Procedural History**

On June 27, 2025, a criminal complaint was issued in the Eastern District of Virginia, charging the defendant with sending threatening interstate communications. Dkt. 1. The defendant was arrested in August 2025, after he finished serving his sentence for violation of his supervised release in D.C. Then, on September 25, 2025, a federal grand jury in the Eastern District of Virginia returned a three-count Indictment charging the defendant with making threats against the president, in violation of 18 U.S.C. § 871, and two counts of sending threatening interstate communications, in violation of 18 U.S.C. § 875(c). Dkt. 15.

On December 15, 2025, the defendant entered a guilty plea, pursuant to a plea agreement, to Count 2 of the Indictment, sending threatening interstate communications. The defendant has been detained on this charge since his arrest in August 2025. His sentencing hearing is currently scheduled for March 11, 2026.

**SENTENCING ANALYSIS**

I.     **Statutory Penalties and Guidelines Calculations**

The offense of sending threatening interstate communications, in violation of 18 U.S.C. § 875(c), carries a maximum sentence of 5 years in prison and up to 3 years of supervised release.

To determine an appropriate sentence, "[a] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *United States v.*

3

*Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  Next, "the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence."  *Id*.  Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities.  *See* 18 U.S.C. § 3553(a).

Although the guidelines are advisory and are only one of the factors listed in § 3553(a), they assist the Court by "provid[ing] certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities."  *United States v. Booker*, 543 U.S. 200, 264 (2005) (internal quotation marks and citations omitted).  Indeed, in the ordinary case, there will be a significant amount of overlap between the guidelines range and the remaining § 3553(a) factors, because the guidelines "reflect a rough approximation that might achieve § 3553(a)'s objectives."  *Rita v. United States*, 551 U.S. 338, 350 (2007).  Thus, although the guidelines are not mandatory, they remain "the starting point and the initial benchmark" in ensuring fair and just sentencing both for defendants, individually, and across multiple cases, collectively.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Ultimately, the sentence imposed must meet a standard of reasonableness.  *See Booker*, 543 U.S. at 260-61.

The U.S. Probation Office prepared a PSR containing the defendant's Guidelines calculation.  As explained in the PSR, based on an adjusted offense level of 20, the acceptance of responsibility credits, and a Criminal History Category of III, the defendant's Guidelines range is 30 to 37 months' imprisonment.  PSR ¶ 135.

## II.     Section 3553(a) Factors

After calculating the Guidelines range, a sentencing court must consider that range and

the sentencing factors set forth in Section 3553(a) to determine an appropriate sentence. *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, careful consideration of the § 3553(a) factors demonstrates that a sentence of 28 months' imprisonment, followed by a 3-year term of supervised release, is sufficient but not greater than necessary to reflect the totality of the defendant's conduct and comport with the purposes of sentencing set forth in 18 U.S.C. § 3553.

### A. The nature, circumstances, and seriousness of the defendant's offense

The nature of the offense is undoubtedly serious, particularly in light of the defendant's criminal history. The defendant repeatedly made threats against the life of the President, members of the President's family, and others. Among other things, the defendant threatened – repeatedly – to kill the President. *See* Exhibit 1 at 4-7 (tagging the President's X account, and writing "test my will one more time and you will all be gone . . ."); ("I murder all of you including chump"); (tagging the President's X account, and writing "you are a hopeless and helpless American bitch I will murder all of you filthy rats"); (tagging the President's X account, and writing "I will wipe everything that has to do with you and your name including your family, you sick fuck greedy bitch sitting in my office and ripping ME off."). He also sent threatening messages to the X account for the United States Supreme Court, *see id*. at 14, to journalists, *id*. at 15 ("Fuck bitch you better crawl on your knees and beg if you can do something I will torture your family just wait"), and threatened to rape the President's family, *id*. at 51 ("Let's murder Donald and rape his family into submission like slaves bitches").

The defendant made these threatening statements, knowing both that they would be viewed by law enforcement and the consequences of his actions, and doing it anyway. In many of his posts, he tagged accounts belonging to law enforcement agencies and officers. For example, he tagged Attorney General Pam Bondi's account, the United States Secret Service, the

FBI, and the Department of Justice. The defendant's flouting of his crimes and baiting of law enforcement add to the seriousness of his offenses.

### B.     The defendant's history and characteristics

According to information provided in the PSR, the defendant had a difficult childhood. He was raised primarily by his mother, who divorced his father after suffering his physical abuse. The defendant reported he did not always have the basic necessities growing up, and did not have indoor plumbing until the age of 8. When he was 9, the defendant said his mother began dating a man who physically abused them both.

When the defendant was 12 years old, he moved from Russia to the United States. His mother married an American man, and they settled in Maryland. Still, the defendant reported difficulties with this arrangement, as his mother's marriage to his stepfather was not, apparently, a happy one.

According to the PSR, when the defendant was approximately 29 years old, he was diagnosed with mental health disorders. Subsequent assessments determined he suffered from conditions related to his long history of drug use as well as additional mental health disorders. As reflected in the PSR, the defendant has a substantial criminal record, including multiple arrests for theft, robbery, and drug-related offenses, as well as probation violations.

### C.     The need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence

The defendant has a history of making threats to kill and injure the President and other individuals. Although in this case he did not go so far as to appear at the White House or the Trump International Hotel, his online threats are incredibly troubling, particularly in light of his past. Clearly, the defendant did not learn his lesson from his last conviction for threatening the President. Thus, a sentence of 28 months in prison is necessary to deter the defendant from

sending threats and further engaging in behavior with the specific intent of putting government officials in fear for their lives and physical safety.

### III. Supervised Release

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(b), the authorized term of supervised release for the defendant's offense is not more than three years. Given the defendant's history, a 3-year term of supervised release is necessary to provide him with steady access to the treatment and monitoring he clearly requires.

The defendant objects to inclusion of Special Conditions 2, 3, and 4, which the government believes are necessary and appropriate conditions of supervised release in this case. Special Condition 2 requires that the defendant participate in a mental health treatment program. The defendant claims he has no mental health issues, which is clearly belied by his previous diagnoses – by multiple mental health professionals – for serious mental health conditions. The government agrees with Probation that mental health treatment is necessary to protect the public from further crimes of the defendant. Special condition 3 requires the defendant to comply with the computer monitoring program and special condition 4 restricts the defendant's use of social media platforms. Again, these conditions are necessary to ensure the safety of the community. The defendant has a history of making threats, and in this case he used social media to transmit those threats. Computer monitoring is essential to ensure that the defendant is complying with the conditions of his release and does not commit further crimes. The defendant has a history of violating the terms of his probation, which makes computer monitoring particularly important in

this case. Further, it is entirely appropriate and necessary to prohibit the defendant from accessing social media, such as X, while on supervised release so as to remove the temptation to engage in the same conduct that led him to his instant conviction.

## CONCLUSION

For the reasons above, and in accordance with the Plea Agreement entered into by the parties, the United States respectfully recommends that the Court impose a sentence of 28 months in prison, a 3-year term of supervised release, and a $100 special assessment under § 3013.

Respectfully submitted,

Date: March 4, 2026         By:         /s/
                                   Lauren Halper
                                   Assistant United States Attorney
                                   United States Attorney's Office
                                   2100 Jamieson Avenue
                                   Alexandria, Virginia 22314
                                   Phone: (703) 299-3700
                                   Email: Lauren.Halper@usdoj.gov